UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 21-cr-30048-MGM |
| | ) | |
| JESSICA LOTTO, | ) | |
| | ) | |
| Defendant | ) | |

<u>GOVERNMENT'S SENTENCING MEMORANDUM</u>

"With loyalty will I…devote myself to the welfare of those committed to my care."  These words complete the Florence Nightingale Pledge, which nurses routinely recite before entering the profession.  At the core of the Pledge is a nurse's duty to care for her patients with the highest degree of competence and altruism.  Certainly, a nurse may never abuse the trust of her patients by putting them in danger of harm.  On February 27, 2019, Jessica Lotto (the "defendant") entered a sedated patient's hospital room and removed fentanyl from the patient's IV bag with a syringe. Because the IV bag continued to flow until it was replaced, the patient continued to receive fentanyl.  However, the defendant's actions placed the patient at a serious risk of harm by potentially introducing contamination into the IV bag,

On May 31, 2022, the defendant pleaded guilty to a one-count Information charging her with acquiring a controlled substance by fraud, deception, and subterfuge, in violation of 21 U.S.C. § 843(a)(3) and (d)(1).  The United States of America, by Rachael S. Rollins, United States Attorney for the District of Massachusetts, respectfully requests that the Court order the following sentence:  *<u>probation for 36 months, with the first six months to be served in home detention; no fine due to the defendant's inability to pay; and a mandatory special assessment of $100.</u>*  The government further requests that the Court include as conditions of probation that the defendant:

*(1) surrender her license to practice nursing; (2) make no attempt to obtain, apply for, or otherwise make efforts to reinstate her nursing license; and (3) make no attempt to seek employment as any medical professional providing care to patients, including as a nurse.*

I.      Factual Background

The facts of this case are set forth more fully in the Probation Department's January 18, 2023 Presentence Investigation Report ("PSR") and summarized herein. PSR, ¶¶ 8-21. On February 27, 2019, while working as a nurse at Berkshire Medical Center ("BMC"), the Critical Care Unit Director (the "Director") observed the defendant withdrawing fentanyl with a syringe from a patient's IV line. PSR, ¶ 13. At the time, the patient was sedated and on a ventilator. Jan. 19, 2023 Interview of BMC Counsel J. Barnes, attached hereto as Exhibit A. As the defendant started to put the syringe in her coat, she turned slightly and seemed startled to see the Director standing there. PSR, ¶ 14. After a brief exchange between the two, the defendant walked past the Director and dropped the syringe into the sharps container on the wall. PSR, ¶ 14.

The Director then asked housekeeping to unlock the sharps container from the patient's room. PSR, ¶ 18. At the top of the container was a 60 mL syringe with approximately 10-11 mL of liquid inside. PSR, ¶ 18. Subsequent laboratory testing of a small amount of the liquid from the syringe confirmed that the syringe contained the same concentration of fentanyl as BMC's standardized fentanyl infusion solution. PSR, ¶ 18. The black demarcation lines on the recovered syringe appeared to be partially worn off, suggesting that it had been used multiple times, which is contrary to standard nursing practice. PSR, ¶ 19. The defendant later admitted to removing the fentanyl from the patient's IV bag. PSR, ¶ 21.

II.     The Defendant Merits the Requested Sentence

As the Supreme Court explained in *Gall v. United States*, 128 S.Ct. 586, 596-97 (2007), the district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines

range. The Court must then consider all of the factors in 18 U.S.C. § 3553(a) to determine whether they support the requested sentence and impose a sentence that is "sufficient, but not greater than necessary." *United States v. Dixon*, 449 F.3d 194, 203-04 (1st Cir. 2006).

A.   The Probation Department Correctly Calculated the Sentencing Guidelines

The Probation Department correctly found the defendant's total offense level to be 10, which includes a 2-point enhancement for the defendant's abuse of trust or use of a special skill and a 2-point enhancement because the defendant's offense affected a vulnerable victim.   PSR, ¶¶ 26-34.  The defendant objects to the vulnerable victim enhancement, arguing that the only victim of her crime is BMC, which is not vulnerable.  Def. Obj. to PSR Nos. 3 and 4.

The government agrees that BMC is a victim and that it is not a vulnerable victim. However, the sedated patient whose fentanyl the defendant stole was also a victim – and a particularly vulnerable one.  The defendant's myopic view of the victim ignores the serious risk of harm she introduced to the patient and in effect argues that there can never be a patient victim in a drug diversion case.

The vulnerable victim enhancement applies where "the defendant knew or should have known that a victim of the offense was a vulnerable victim."  U.S.S.G. § 3A1.1(b)(1).  Courts apply a two-step test to determine whether this enhancement is applicable.  First, the sentencing court must determine that "the victim of the crime was vulnerable, that is the victim had an impaired capacity…to detect or prevent crime."  Second, the sentencing court must determine that the defendant knew or should have known of the victim's unusual vulnerability."  *United States v. Stella*, 591 F.3d 23, 29-30 (1st Cir. 2009).  The Application Notes to this guideline define a "vulnerable victim" as a person "who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." Application Note 2, U.S.S.G. § 3A1.1.  The First Circuit observed that "the vulnerable victim guideline is primarily

3

concerned with the impaired capacity of the victim to detect or prevent the crime." *United States v. Gill*, 99 F.3d 484, 486 (1st Cir. 1996).

First, the patient is clearly a victim. The defendant's argument that only BMC can be a victim because BMC was the owner of the fentanyl ignores that when the defendant extracted fentanyl with a used syringe from the IV bag, that IV bag was physically connected to the patient's bloodstream. The Court may not ignore the fact that defendant is responsible for all harm her relevant conduct brought upon the patient, not just those who fit the narrow definition of victim she urges the Court to adopt. *See United States v. Kennedy*, 554 F.3d 415, 423-24 (3d Cir 2009) (finding elderly account holders from whom the defendant stole to be vulnerable victims, even though they suffered no actual financial loss); *United States v. Moon*, 513 F.3d 527, 541 (6th Cir. 2008) (finding chemotherapy patients to be vulnerable victims in Medicaid fraud case because defendant's relevant conduct in depriving the patients of the opportunity to receive the full benefit of the treatment qualified as harm).

Second, it is hard to conceive of a more vulnerable victim than the patient in the instant case. At the time that the defendant inserted a seemingly used syringe into the IV bag that was connected to the patient's bloodstream, the patient was sedated, unaware of the defendant's actions. Ex. A. The defendant was unquestionably aware of the patient's impaired capacity, and she knew that the patient was receiving fentanyl for pain management. Given the patient's compromised medical condition and need for fentanyl for pain management, the patient was "particularly susceptible" to the defendant's criminal conduct. The two-level enhancement is appropriate and supported by case law. *See Stella*, 591 F.3d at 29-30 (affirming sentencing court's application of vulnerable victim enhancement and finding that unidentified patients were vulnerable "by reason of their illness and the need for medication"); *United States v. Wilson*, 2006

WL 1663244, at *1, 4 (D. Idaho, May 30, 2006); (finding vulnerable victim enhancement appropriate where nurse tampered with vials of Valium and Ativan because the victim was "not only young and ill, he was seriously ill").

     B.  <u>The Nature and Circumstances of the Offense, the History and Characteristics of the Defendant, and the Need for the Sentence Support the Requested Sentence</u>

As discussed above, the defendant's crime is serious.  The defendant put a defenseless patient in significant danger to satisfy her immediate need for fentanyl.  In fashioning the requested sentence, the government has considered that the defendant has struggled with substance use disorder, a factor that fueled her crime. The government also credits the defendant for the strides she has made in her life as outlined in the PSR and for her notable participation in the restorative justice program.

At the core of the government's requested sentence is the need for specific deterrence and protection of the public.  Because the defendant's conduct constituted drug diversion and not tampering, the court may order no more than a year of supervised release if it were to order any sentence of incarceration.  PSR, ¶ 74.  Thus, the court could only ensure that the defendant comply with the important conditions the government proposes – that the defendant surrender her nursing license, refrain from seeking a nursing license, and refrain from seeking to care for patients – for a maximum of one year after she serves a prison sentence.  Conversely, if the Court orders a sentence of Probation, the Court may better ensure the specific deterrence and rehabilitation of the defendant and the protection of the public by imposing the proposed conditions for a much longer period of up to five years.  PSR, ¶ 76.

     C.  <u>The Requested Sentence is Consistent with Other Sentences Ordered for Similar Crimes</u>

The government's recommended sentence in this case is appropriate when compared to

sentences recently received by other defendants in drug diversion and tampering cases. Within this District, drug diversion has rarely been charged, so reviewing sentences ordered in other federal courts is helpful in determining an appropriate sentence in the instant case. The following is a chart of recent drug diversion cases from various federal jurisdictions:

| Date of Sentencing | Case Name | District | Summary | Sentence Received |
|---|---|---|---|---|
| 04/26/2022 | *United States v. Mary Schmidt Monahan*[1] | District of Montana | Defendant nurse removed fentanyl with syringe from two drug vials in patient's room. | 2 years probation |
| 11/09/2021 | *United States v. Elizabeth Prophitt*[2] | Eastern District of Michigan | Defendant nurse anesthetist stole more than 2,000 vials of fentanyl, hydromorphone, morphine, and midazolam for her own use from an automated dispensing machine by using protected patient information and falsifying medical documents. | 3 years probation |
| 09/18/2021 | *United States v. Kurt Vasquez*[3] | District of Colorado | Defendant nurse ordered more fentanyl, midazolam, and propofol than was necessary for procedures and kept the excess for himself. Defendant falsely documented in patient charts that he had administered drugs that he had not. | 3 months imprisonment |

---

[1] *See* https://www.justice.gov/usao-mt/pr/missoula-nurse-sentenced-felony-drug-diversion (last visited Feb. 13, 2023).

[2] *See* https://www.justice.gov/usao-edmi/pr/former-certified-registered-nurse-anesthetist-ann-arbor-va-hospital-sentenced-3-years (last visited Feb. 13, 2023).

[3] *See* https://www.justice.gov/usao-co/pr/colorado-nurse-sentenced-prison-stealing-controlled-substances (last visited Feb. 13, 2023).

| Date of Sentencing | Case Name | District | Summary | Sentence Received |
|---|---|---|---|---|
| 11/27/2019 | *United States v. La Vang*[4] | District of Minnesota | Defendant working as a home healthcare nurse for an 80-year-old woman recovering from multiple surgeries stole oxycodone and hydrocodone from his patient and replaced the pills with loratadine and acetaminophen. During this time, the victim's health declined precipitously. | 18 months imprisonment |
| 04/17/2019 | *United States v. Jennifer Fanopoulos*[5] | District of Idaho | Defendant nurse on at least 28 occasions removed fentanyl for her own use from an automated dispensing machine by falsifying and manipulating information in the computer system. | 3 years probation |
| 03/05/2019 | *United States v. Todd Mehrhoff*[6] | Western District of Wisconsin | Defendant nurse anesthetist removed fentanyl from an automated dispensing machine for his own use.  Defendant's coworkers discovered the diversion when they found a used fentanyl syringe left unattended on a medical cart. | 3 years probation |

---

[4] *See* https://www.justice.gov/usao-mn/pr/registered-nurse-sentenced-18-months-federal-prison-stealing-opioids-elderly-patient (last visited Feb. 13, 2023).

[5] *See* https://www.justice.gov/usao-id/pr/boise-nurse-sentenced-obtaining-controlled-substances-fraud (last visited Feb. 13, 2023).

[6] *See* https://www.justice.gov/usao-wdwi/pr/nurse-anesthetist-sentenced-stealing-fentanyl-va-hospital (last visited Feb. 13, 2023).

| Date of Sentencing | Case Name | District | Summary | Sentence Received |
|---|---|---|---|---|
| 02/14/2019 | *United States v. James Allen Moorehead*[7] | Northern District of Iowa | Defendant nurse stole hydrocodone pills by using patient identities and diverting the patients' prescriptions to himself.  Defendant concealed his scheme by making false entries in patient medical records stating that the patients had received medication they had not.  Defendant also administered Tylenol to patients instead of hydrocodone.  Multiple patients reported increased pain during Defendant's shifts.  Defendant had had his nursing license revoked for similar conduct in 2008.  The Court also found Defendant had lied on a court form to obtain court-appointed counsel. | 3 years imprisonment |
| 04/28/2018 | *United States v. Marlene Gilmore*[8] | District of Colorado | Defendant nurse stole fentanyl, morphine, and hydromorphone from a locked automated dispensing machine. | 4 months imprisonment |

---

[7] *See* https://www.justice.gov/usao-ndia/pr/mason-city-nurse-sentenced-three-years-federal-prison-stealing-pain-medication-over (last visited Feb. 13, 2023).

[8] *See* https://www.justice.gov/usao-co/pr/nurses-sentenced-prison-stealing-opioids-colorado-hospitals (last visited Feb. 13, 2023).

The following is a chart of recent tampering cases from the District of Massachusetts:

| Date of Sentencing | Case Name | Docket Number | Summary | Sentence Received |
|---|---|---|---|---|
| 01/12/2023 | *United States v. Gwen Rider* | 21-CR-40014-TSH | Defendant nurse removed morphine from a patient's bottle and tampered with the remaining morphine at a nursing home on at least three to four occasions. Defendant admitted to stealing dilaudid from a prior nursing site. During the pendency of the case, Defendant was charged with other crimes unrelated to the tampering. | 52 months imprisonment |
| 01/09/2023 | *United States v. Hugo Vieira* | 22-CR-10052-AK | Defendant nurse removed fentanyl from vials and replaced it with saline for about two years. Investigators found that every one of the 60 vials they collected from the facility's storage cabinet had been tampered with and contained only 1.3 to 7 percent of the declared concentration. | 5 years probation (First year home detention) |
| 12/20/2021 | *United States v. Marietta Strickland* | 20-CR-10114-IT | Defendant nurse, over a period of at least two months, replaced 120 oxycodone pills intended for an 89 year-old nursing home patient with other prescription medication including blood pressure, Alzheimer's disease, diabetes, and anti-seizure medication. Defendant gave the patient at least 77 pills that were not prescribed to the patient. | 15 months imprisonment |
| 08/18/2021 | *United States v. Danielle Works* | 20-CR-30032-MGM | Defendant nurse replaced multiple bottles of morphine prescribed to patients with water or cough syrup. Defendant's conduct extended to at least three separate nursing homes. Defendant consumed the morphine at work, leaving her intoxicated and unable to care for her hospice care patient.  The patient died the day after this incident. | 20 months imprisonment |

| Date of Sentencing | Case Name | Docket Number | Summary | Sentence Received |
|---|---|---|---|---|
| 06/29/2021 | *United States v. Mark Croft* | 20-CR-10330-ADB | Defendant nurse tampered with at least 18 carpujects of hydromorphone from an automated dispensing machine in a hospital emergency department.  Defendant replaced the drug with saline. Before this crime, Defendant had engaged in similar conduct several years before. | 12 months and 1 day imprisonment |
| 04/12/2021 | *United States v. Michael Langlois* | 18-CR-10352-MLW | Defendant nurse removed morphine from a bottle and replaced it with Benadryl and then administered the tampered drug to his 80 year-old hospice patient who had been dying of lung cancer that had spread to his bones. Testing revealed that the morphine bottle contained only 63.5% of its declared concentration.  In addition, Defendant had diluted all six bottles of morphine on his medication cart, four of which he diluted with Benadryl, which is believed to be dangerous for elderly patients. Another nurse discovered Defendant unresponsive and sweaty at the conclusion of his shift. Defendant admitted to tampering the night before this incident as well – Defendant removed morphine from bottles intended for two other elderly patients and replaced it with water. | 42 months imprisonment |

| Date of Sentencing | Case Name | Docket Number | Summary | Sentence Received |
|---|---|---|---|---|
| 02/24/2021 | *United States v. Kathleen Noftle* | 19-CR-10420-NG | Defendant nurse diluted morphine bottles intended for patients with tap water for a period of at least two months.  When Defendant learned that hospital officials were investigating the tampering, she planted a syringe cap of morphine on her coworker's medical cart to divert suspicion onto her coworker. Investigation revealed that Defendant had been allowed to resign in lieu of termination from another hospital for mishandling narcotics. | 40 months imprisonment |
| 09/14/2020 | *United States v. Brianna Duffy* | 19-CR-10225-WGY | Defendant nurse tampered with 17 bottles of morphine belonging to 16 patients at 6 separate facilities over a two-year period. | 60 months imprisonment |
| 12/28/2019 | *United States v. Lauren Perrin* | 19-CR-10088-MLW | Defendant nurse tampered with three morphine bottles by removing the medicine and replacing it with cough syrup.  The morphine should have been dispensed to an 88-year-old hospice patient under Defendant's care for approximately three weeks leading to the patient's death. Testing revealed that two of the morphine bottles contained only 19-29% of the correct concentration of morphine.  The third bottle, which was discovered before it could be administered to the patient, contained only 3.9% of the correct concentration of morphine. | 54 months imprisonment |

While the drug diversion and tampering cases offer some comparable examples, none of the conduct described above squarely matches the facts leading to the defendant's crime.  Still, when comparing the defendant's conduct to that of other nurses who committed drug diversion or

tampering crimes, the requested sentence is consistent with the sentences outlined in this memorandum.  The defendant stole fentanyl from the IV bag of a patient who was unaware of the defendant's actions.  In doing so, she put the patient at risk of infection and other diseases.  The conduct was more serious than that of a nurse who stole pills from an automated dispensing machine.  However, the defendant is charged with a single incident, and she did not attempt to tamper with the patient's IV bag by replacing the fentanyl with another substance, as did many of the defendants who received lengthy prison sentences.

III.    <u>Conclusion</u>

For the foregoing reasons, the Government respectfully requests that the Court impose the sentence of probation for 36 months, with the first six months to be served in home detention; no fine due to the defendant's inability to pay; and a mandatory special assessment of $100.

Respectfully submitted,

RACHAEL S. ROLLINS
UNITED STATES ATTORNEY

By:    <u>*/s/ Deepika Bains Shukla*</u>
DEEPIKA BAINS SHUKLA
MA 706735
Assistant United States Attorneys
300 State Street, Suite 230
Springfield, MA 01105
413-785-0237
deepika.shukla@usdoj.gov

Date: February 13, 2023

<u>Certificate of Service</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Deepika Bains Shukla*
Deepika Bains Shukla
Assistant United States Attorney

Date: February 13, 2023